**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
PORTLAND DIVISION**

NICOLE L. MCGINLEY

               Plaintiff

v.

EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC., LEXISNEXIS RISK SOLUTIONS, and NATIONSTAR MORTGAGE, LLC.

               Defendants

CASE NO.

**JURY TRIAL DEMANDED**

**COMPLAINT**

NOW COMES Plaintiff, Nicole McGinley (hereinafter the "Plaintiff"), by and through their counsel of Record to make their allegations known against the Defendants through their complaint that alleges the following:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act).

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

1

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. All violations by the Defendants were knowing, willful, reckless, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

5. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named in this Complaint.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7. Venue in this District is appropriate under 28 U.S.C. §1391(b). Plaintiff resides in this District and the events giving rise to this litigation occurred in this District.

## PARTIES

8. Plaintiff is a natural person residing in Poland, Maine, and is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

9. Defendant Experian Information Solutions, Inc. (hereinafter "Experian"), is a Foreign For-Profit Limited Liability Company registered to do business in Maine and with a registered agent in Maine. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Experian is reporting consumer credit files on thousands of consumers in the District of Maine.

10. Defendant TransUnion, LLC (hereinafter "TransUnion"), is a Foreign For-Profit Limited Liability Company registered to do business in Maine and with a registered agent in Maine.

Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, TransUnion is reporting consumer credit files on thousands of consumers in the District of Maine.

11. Defendant Equifax Information Services, LLC (hereinafter "Equifax"), is a Foreign For-Profit Limited Liability Company registered to do business in Maine and with a registered agent in Maine. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, Equifax is reporting consumer credit files on thousands of consumers in the District of Maine.

12. Defendant LexisNexis Risk Solutions (hereinafter "LexisNexis") is a Foreign For-Profit Limited Liability Company registered to do business in Maine and with a registered agent in Maine. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, LexisNexis is reporting consumer credit files on thousands of consumers in the District of Maine.

13. Defendant Nationstar Mortgage, LLC (hereinafter "Nationstar"), is a Foreign for-profit company registered to do business in Maine. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the District of Maine.

## FACTUAL ALLEGATIONS

14. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

15. Plaintiff resides in Poland, Maine.

16. Plaintiff is the victim of inaccurate credit reporting.

17. On information and belief, Plaintiff is the victim of file mixing.

18. On information and belief, Plaintiff's credit files with Experian, Trans Union, Equifax, and LexisNexis (collectively "the Credit Reporting Agencies" or "the CRAs") are mixed with the credit files of Plaintiff's twin sister.

19. On information and belief, through no fault of Plaintiff's own, Plaintiff's credit files became mixed with those of her sister due to the lack of reasonable procedures in place by the CRAs to prevent this from occurring.

20. As a result of the file mixing, accounts, hard inquiries, addresses, employment information, and other personal data belonging to Plaintiff's sister has been appearing on Plaintiff's credit reports for decades, causing damage to Plaintiff.

21. Through the years, Plaintiff has repeatedly attempted to have the file mixing corrected, however, Plaintiff's efforts have been unsuccessful.

22. Over the years, Plaintiff recalls multiple attempts to have the inaccurate credit reporting corrected.

23. Despite Plaintiff's efforts over the years, new accounts and other information belonging to Plaintiff's sister has routinely been added to Plaintiff's credit reports.

24. Plaintiff recalls countless past attempts to have the file mixing corrected once and for all, to no avail.

25. On or around July 2024, Plaintiff spoke with her sister and determined that numerous inaccurate items belonging to her sister were being reported on Plaintiff's credit reports, making it clear that Plaintiff's credit files had been mixed with those of her sister.

26. Conversely, some of Plaintiff's own accounts and other information were being reported on Plaintiff's sister's credit reports.

27. The following accounts and other information belonging to Plaintiff's sister were being reported on Plaintiff's credit reports for a substantial amount of time based on information and belief:

    a. <u>Experian:</u>

        a. Nissan Motor Acceptance 10249029816****
        b. Phone number: 207-854-6969
        c. Phone number: 207-773-6161

    b. <u>Trans Union:</u>

        a. Nissan Motor Acceptance 10249029816****
        b. Phone number: 207-322-4545

    c. <u>Equifax:</u>
        a. Nissan Motor Acceptance 10249029816****

28. In addition to the appearance of her sister's accounts and other information appearing on her credit reports, Plaintiff found that multiple accounts were being inaccurately reported by the CRAs for a substantial amount of time based on information and belief.

29. The following accounts were being inaccurately reported by the CRAs:

    a. <u>Experian:</u>

        a. Nationstar Mortgage 62900**** (mortgage account discharged in Plaintiff's 2010 bankruptcy and should no longer be reporting)
        b. Nelnet/Education Financial 161**** (account closed in 2014 and should no longer be reporting)

b. <u>Equifax:</u>

    a. Nationstar Mortgage 62900\*\*\*\* (mortgage account discharged in Plaintiff's 2010 bankruptcy and should no longer be reporting)

    b. Nelnet/Education Financial 161\*\*\*\* (account closed in 2014 and should no longer be reporting)

30. In addition to the inaccurate accounts and the accounts not belonging to Plaintiff, various hard inquiries belonging to Plaintiff's sister were being reported on Plaintiff's credit reports.

31. The inaccurate reporting affected Plaintiff's creditworthiness and credit reputation.

32. The CRAs' inaccurate credit reporting was viewed by third parties, causing damages to Plaintiff.

33. Plaintiff thereafter disputed the inaccurate credit reporting through dispute packages mailed directly to the CRAs via USPS Certified Mail. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

34. Plaintiff's Equifax dispute package was delivered and signed for by an Equifax agent or employee on October 1, 2024.

35. Plaintiff's Experian dispute package was delivered and signed for by an Experian agent or employee on October 2, 2024.

36. Plaintiff's Trans Union dispute package was delivered and signed for by a Trans Union agent or employee on October 2, 2024.

37. After confirming that each of the CRAs were in receipt of her dispute packages, Plaintiff waited more than thirty (30) days before viewing her credit reports again.

38. After pulling new credit reports, Plaintiff found that much of the information disputed by Plaintiff was still being reported by the CRAs.

6

39. The CRAs continued reporting the following inaccurate information on Plaintiff's credit reports for more than thirty (30) days following their receipt of Plaintiff's dispute packages:

    a. Experian:

        a. Nationstar Mortgage 62900****

    b. Equifax:

        a. Nationstar Mortgage 62900****

40. Multiple inaccurate phone numbers and hard inquiries belonging to Plaintiff's sister also continued reporting for more than thirty (30) days following the CRAs' receipt of Plaintiff's disputes.

41. Plaintiff later viewed her LexisNexis credit report and found that dozens of inaccurate items belonging to her sister, including numerous names, addresses, insurance policy records, inquiries, inaccurate collection records, credit inquiries, and other information were being reported on Plaintiff's credit report by LexisNexis.

    a. LexisNexis:

        i. NICOLETTE MARIE MCGINLEY
        ii. NICOLETTE M MC GINLEY
        iii. NICOLETTE M MCGINLEY
        iv. NICOLETTE M. MCGINLEY
        v. MS NICOLETTE M MCGINLEY
        vi. Phone number: 207-332-5545
        vii. Phone number: 207-744-9070
        viii. STATE FARM INSURANCE Account #1920881642
        ix. STATE FARM INSURANCE Account #1920881643
        x. STATE FARM INSURANCE Account #1920889911
        xi. STATE FARM INSURANCE Account #1920889912
        xii. STATE FARM INSURANCE Account #1920968936
        xiii. STATE FARM INSURANCE Account #1920995838
        xiv. STATE FARM INSURANCE Account #5231543730
        xv. STATE FARM INSURANCE Account #5231909824
        xvi. STATE FARM INSURANCE Account #5231911249
        xvii. STATE FARM INSURANCE Account #523C132903

xviii.   NICOLETTE MCGINLEY MARIE- Policy Number 1543730F2752A, Claim Number 528266R25190319

xix.   NICOLETTE MCGINLEY M. License Number XXXXX02 Issued 20200904

xx.   NICOLETTE MCGINLEY M. License Number XXXXX02 Issued 20090126

xxi.   NICOLETTE MCGINLEY M. License Number XXXXX02 Issued 20200904

xxii.   Credit Application 2024/11/20

xxiii.   Collections 2024/07/24

xxiv.   Collections 2024/07/24

xxv.   Collections 2024/07/22

xxvi.   Collections 2024/06/12

xxvii.   Credit Application 2024/02/02

xxviii.   Credit Application 2024/12/16

xxix.   Collections 2023/10/09

xxx.   Collections 2023/09/08

xxxi.   Collections 2023/08/09

xxxii.   Collections 2023/07/10

xxxiii.   Collections 2023/06/10

xxxiv.   Collections 2023/05/11

xxxv.   Collections 2023/05/11

xxxvi.   Collections 2023/04/07

xxxvii.   Discover Financial Service 01/12/2024

xxxviii.   Credit Application 2023/10/19

xxxix.   11 BROADWAY, 1515 NEW YORK, NY 10004-1387

42. The inaccurate reporting by LexisNexis was viewed by third parties, causing damages to Plaintiff.

43. Plaintiff thereafter disputed the inaccurate credit reporting though dispute packages mailed directly to LexisNexis via USPS Certified Mail.

44. Plaintiff's LexisNexis dispute package included a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's passport, a copy of Plaintiff's social security card, and a copy of an invoice showing her current address for identity verification.

45. Plaintiff's LexisNexis dispute package was delivered and signed for by a LexisNexis agent or employee on March 29, 2025.

46. On June 2, 2025, more than thirty (30) days following its receipt of Plaintiff's dispute package, Plaintiff viewed her LexisNexis credit report and found that numerous disputed items belonging to Plaintiff's sister were still appearing on Plaintiff's credit report.

47. In addition to failing to remove numerous disputed items from Plaintiff's credit report, Plaintiff found that new inaccurate information had been added to her LexisNexis credit report.

48. As a result of Defendants' conduct, Plaintiff suffered substantial damages, described in detail below.

## PLAINTIFF'S DAMAGES

49. As a result of Defendants' violations of the FCRA, Plaintiff is entitled to actual, statutory, and punitive damages, along with their attorneys' fees and costs in this matter. Defendants' conduct was such that Defendants acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff.

50. The conduct of the Defendants was a direct and/or proximate cause, as well as a substantial factor in bringing about injuries, damages, and harm suffered by Plaintiff. Plaintiff continues to suffer as a result of Defendants' conduct. Plaintiff expects their damages to continue to accrue and be ongoing until they are made whole again if that ever occurs.

51. Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as such other relief permitted by law. Plaintiff suffered the following types of damages due to the conduct of Defendants:

      a.     Emotional damages in the form of mental anguish, humiliation, and embarrassment. Plaintiff has endured significant mental distress due to her

ongoing file mixing issues that have persisted for much of her adult life. Plaintiff has suffered from high levels of stress and anxiety because of the inaccurate reporting. The inaccurate credit reporting has been viewed by third parties, including employers and prospective creditors, to whom Plaintiff has had to explain the inaccurate reporting and causing Plaintiff to feel embarrassed and humiliated.

Plaintiff's close personal relationships, particularly her relationship with her sister, have been negatively impacted by the inaccurate credit reporting. Due to the sisters' long history of file mixing, Plaintiff has delayed making important financial decisions, including filing for bankruptcy, out of fear that the bankruptcy would be reported on her sister's credit reports rather than her own. Plaintiff has disputed the ongoing inaccurate reporting many times over the years and at one point recalls Defendant Trans Union informing her that she would need to sue her own sister in order to fully resolve the persistent credit reporting errors.

Overall, Plaintiff feels immensely stressed, powerless, and depressed as a result of the file mixing and lives in a perpetual state of worry and anxiety, for which she takes medication.

b.      Physical manifestations of mental anguish, humiliation, and embarrassment. The stress and anxiety Plaintiff experiences on a daily basis as a result of the file mixing have taken a toll on Plaintiff's overall physical health. As a result of the inaccurate credit reporting, Plaintiff has experienced significant weight gain, frequent headaches, hair loss, insomnia, and neck and

back pain. Plaintiff sees her primary care physician annually to monitor her condition and has been prescribed medication to alleviate her anxiety and depression symptoms.

    c.    Financial damages, including credit-related damages to Plaintiff's creditworthiness, credit reputation, and borrowing power. As a result of the file mixing, Plaintiff's credit reports have been plagued with inaccurate information for most of Plaintiff's adult life, affecting Plaintiff's debt-to-income ratios, and ultimately, her overall credit health. The inaccurate credit reporting has been viewed by third parties, furthering Plaintiff's damages. Plaintiff's job has also been jeopardized by the inaccurate reporting as she has to undergo periodic credit checks in order to maintain her employment.

52. Plaintiff's damages caused by and through the conduct of Defendants are more specifically described as follows:

    a.    Emotional damages in the form of severe and debilitating mental anguish, humiliation, embarrassment, depression, and anxiety.

    b.    Physical manifestations of stress and anxiety, including weight gain, hair loss, loss of sleep, neck and back pain, and headaches.

    c.    Financial damages, including damage to Plaintiff's creditworthiness, credit reputation, and borrowing power.

    d.    All other damages as described above.

53. Plaintiff's damages attributable to Defendants are serious, continuing, and ongoing.

54. Defendants' actions have led to Plaintiff's great detriment and loss and are caused by the conduct of Defendants described herein.

## CAUSES OF ACTION

55. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

56. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages which Plaintiff has suffered.

## VIOLATIONS OF THE FAIR CREDIT REPORTNG ACT (FCRA)

57. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

58. The FCRA defines a "Consumer Reporting Agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

59. Defendants Experian, Trans Union, Equifax, and LexisNexis are Consumer Reporting Agencies pursuant to the FCRA and will collectively be referred to as "the CRAs," or "the CRA Defendants."

60. The FCRA defines a "Person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

61. The Code of Federal Regulations defines a "Furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 CFR § 1022.41(c).

62. Defendant Nationstar is a "Person" pursuant to the FCRA, and "Furnisher" pursuant to the Code of Federal Regulations (CFR) and be referred to as "the Data Furnisher" or "the Data Furnisher Defendant."

63. The following conduct of the CRAs and the Data Furnisher was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects their damages caused by the CRAs and the Data Furnisher to continue to accrue and be ongoing until Plaintiff is made whole again.

64. The CRAs and the Data Furnisher as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in their actions related to Plaintiff. As a result of these Defendants' violations of the FCRA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

65. Plaintiff's damages attributable to the CRAs and the Data Furnisher are described in detail in paragraphs 49-54 above.

66. Plaintiff's damages attributable to the CRAs and the Data Furnisher are serious, continuing, and ongoing.

67. This suit is brought against the Defendants for violations of the FCRA which are the causes of Plaintiff's damages. In all instances of violating the FCRA, Defendants did so willfully, intentionally, recklessly, and/or negligently. Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees under 15 U.S.C. §1681n and §1681o.

### <u>COUNT I:</u>

**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Defendants Experian, Trans Union, Equifax, and LexisNexis)**

68. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

69. The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

70. The CRAs maintained inaccurate information about Plaintiff and prepared credit reports regarding Plaintiff containing this derogatory and inaccurate information.

71. Despite actual and implied knowledge that Plaintiff was the victim of file mixing, the CRAs readily stored, prepared, reported, and/or sold reports containing inaccurate information about Plaintiff, and in doing so, the CRAs suggested that Plaintiff was responsible for accounts, inquiries, and other information that belongs to Plaintiff's sister, or that was otherwise should not have been reported.

72. The CRAs' inaccurate reporting was viewed by third parties.

73. The CRAs' conduct as to Plaintiff was such that a third party who viewed Plaintiff's credit reports could reasonably infer that the inaccurate information being reported by the CRAs was accurate, to Plaintiff's great detriment.

74. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit files and/or reports they maintained and published about Plaintiff.

75. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have known that the information being reported about Plaintiff was inaccurate.

14

76. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would never have reported the inaccurate information belonging to Plaintiff's sister on Plaintiff's credit files/reports.

## COUNT II:

### 15 U.S.C. § 1681i(a)(1)(A)
### Failure to Conduct a Reasonable Investigation into Plaintiff's Dispute
### (Defendants Experian, Equifax, and LexisNexis)

77. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

78. The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…. before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

79. Plaintiff disputed the inaccurate accounts and other information through dispute packages mailed directly to the CRAs via USPS certified mail.

80. Plaintiff's Experian and Equifax dispute packages contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

81. Plaintiff's LexisNexis dispute package contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's passport, a copy of

Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

82. Plaintiff's dispute packages each contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of inaccurate credit reporting and that the inaccurate accounts and other information had been placed on Plaintiff's credit reports in error.

83. After Plaintiff verified that their dispute packages had been delivered to the CRAs by USPS, Plaintiff waited more than thirty (30) days before once again viewing their credit reports following their disputes.

84. After pulling new credit reports, Plaintiff found that the disputed accounts and other information remained on their credit report following the CRAs' processing of Plaintiff's disputes, in violation of 15 U.S.C. § 1681i(a)(1)(A).

85. Plaintiff provided the CRAs with ample information proving that the disputed accounts and other information were the product of file mixing and inaccurate credit reporting. Had the CRAs conducted a reasonable investigation in accordance with the requirements imposed by the FCRA, they would have deleted the item from Plaintiff's credit files before the end of the thirty (30) day period.

## COUNT III:

### 15 U.S.C. § 1681i(a)(4)
### Failure to Read and Consider Documents Attached to Plaintiff's Dispute
### (Defendants Experian, Equifax, and LexisNexis)

86. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

87. The FCRA provides that "[i]n conducting any reinvestigation under [15 U.S.C. § 1681i(a)(1)], with respect to disputed information in the file of any consumer, the consumer

16

reporting agency shall review and consider all relevant information submitted by the consumer in the [30-day] period described in [15 U.S.C. § 1681i(a)(1)(A)] with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

88. Plaintiff disputed the inaccurate accounts and other information through dispute packages mailed directly to the CRAs via USPS certified mail.

89. Plaintiff's Experian and Equifax dispute packages contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

90. Plaintiff's LexisNexis dispute package contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's passport, a copy of Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

91. Plaintiff's dispute packages each contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of inaccurate credit reporting and that the inaccurate accounts and other information had been placed on Plaintiff's credit reports in error.

92. Plaintiff, through their dispute packages, provided the CRAs with documents sufficient to prove that Plaintiff was the victim of file mixing and inaccurate credit reporting, however, the CRAs failed to review and consider all relevant documents submitted by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(4).

93. Had the CRAs acted in accordance with the investigation requirements imposed by the FCRA and reviewed and considered each document contained in Plaintiff's dispute packages, it would have been easy for the CRAs to determine that Plaintiff was the victim of file mixing and delete and/or suppress the disputed information accordingly.

<u>**COUNT IV:**</u>

**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to Delete and/or Modify the Disputed Information**
**(Defendants Experian, Equifax, and LexisNexis)**

94. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

95. The FCRA provides that:

>    (5) Treatment of Inaccurate or Unverifiable Information
>
>    (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-
>
>    (i)   promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
>    (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

15 U.S.C. §1681i(a)(5)(A).

96. Plaintiff disputed the inaccurate accounts and other information through dispute packages mailed directly to the CRAs via USPS certified mail.

97. Plaintiff's Experian and Equifax dispute packages contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

98. Plaintiff's LexisNexis dispute package contained a detailed and thorough dispute letter signed by Plaintiff, a copy of Plaintiff's driver's license, a copy of Plaintiff's passport, a copy of

Plaintiff's social security card, and a copy of an invoice showing Plaintiff's current address for identity verification.

99. Plaintiff's dispute packages each contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of inaccurate credit reporting and that the inaccurate accounts and other information had been placed on Plaintiff's credit reports in error.

100.     The CRAs violated their duties under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed information from Plaintiff's credit files and/or credit reports.

101.     Had the CRAs conducted reasonable investigations into Plaintiff's disputes as required by statute, they would have easily found that Plaintiff was the victim of file mixing and inaccurate credit reporting and promptly deleted the disputed items from Plaintiff's credit files and/or credit reports in accordance with the FCRA. Instead, the CRAs continued their inaccurate credit reporting about Plaintiff, to Plaintiff's great detriment.

## COUNT V:

### 15 U.S.C. § 1681s-2(b)
### Failure to Conduct a Reasonable Investigation of the Information Disputed by Plaintiff
### (Defendant Nationstar)

102.     Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

103.     The FCRA provides the following:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A)    Conduct an investigation with respect to the disputed information;
>
> (B)    Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C)    Report the results of the investigation to the consumer reporting agency;

19

(D)    If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)    If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i)    Modify that item of information;
(ii)    Deleted that item of information; or
(iii)   Permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b).

104.    The Data Furnisher furnished inaccurate information about Plaintiff to the CRAs.

105.    The Data Furnisher caused an inaccurate account to be added to Plaintiff's credit file with the CRAs.

106.    The mortgage debt being reported by Nationstar was discharged in Plaintiff's 2010 bankruptcy and therefore should not be appearing on Plaintiff's credit reports.

107.    On information and belief, notice of Plaintiff's disputes and attachments were transmitted to the Data Furnisher by the CRAs during the dispute process. Therefore, the Data Furnisher was aware that the disputed account should not have appeared on Plaintiff's credit reports and that it was placed on Plaintiff's reports in error. Still, Nationstar verified the disputed account as accurate and instructed the CRAs to continue reporting the inaccurate information, to the great detriment of Plaintiff.

108.    The Data Furnisher failed to conduct a reasonable, good faith investigation into Plaintiff's notice of dispute.

109.    Had the Data Furnisher acted in accordance with their duties under 15 U.S.C. § 1681s-2(b), the Data Furnisher would have recognized that the disputed account was the product

of inaccurate credit reporting and instructed the CRAs to cease their reporting of the inaccurate account. Instead, the Data Furnisher verified the disputed account as accurate and instructed the CRAs to continue their inaccurate credit reporting about Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a trial by jury and a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a. Actual and compensatory damages pursuant to 15 U.S.C. § 1681;

b. Statutory damages pursuant to 15 U.S.C. § 1681;

c. Punitive damages pursuant to 15 U.S.C. § 1681;

d. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o,

e. Such other and further relief as may be necessary, just and proper.

Dated: September 19, 2025

      Respectfully Submitted,

Jonathan Sahrbeck
Maine Bar License #9984
**Sahrbeck P.C.**
15 Silva Drive
Cape Elizabeth, Maine 04107
Tel.: 207.233.8500
jonathansahrbeck@sahrbeckpc.com

Jonathan Raburn
**Raburn Kaufman, LLC**
8570 Anselmo Lane
Baton Rouge, Louisiana, 70810
Tel.: 225.412.2777

21

jraburn@raburnkaufman.com
*pro hoc vice* to be filed

Kyle Kaufman
**Raburn Kaufman, LLC**
8570 Anselmo Lane
Baton Rouge, Louisiana, 70810
Tel.: 225.412.2777
kkaufman@raburnkaufman.com
*pro hoc vice* to be filed

22